FILED

2009 MAY 22  AM 10: 41

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1  Michael Stortz, SBN 153378
2  Maria Iriarte, SBN 150704
   Disability Rights California
3  San Diego Regional Office
4  1111 Sixth Avenue, Suite 200
   San Diego, CA 92101
5  (619) 239-7861
6  Fax (619) 239-7906
   Michael.Stortz@disabilityrightsca.org
7  Maria.Iriarte@disabilityrightsca.org
8
   Kevin Bayley, SBN  218070
9  Rachel Scherer, SBN 260538
10 Disability Rights California
   Los Angeles Regional Office
11 3580 Wilshire Blvd., #902
12 Los Angeles, CA 90010
   (213) 427-8747
13 Fax (213) 427-8767
14 Kevin.Bayley@disabilityrightsca.org
   Rachel.Scherer@disabilityrightsca.org
15
16 Attorneys for Plaintiff

17              UNITED STATES DISTRICT COURT
18              CENTRAL DISTRICT OF CALIFORNIA
                    WESTERN DIVISION
19
20 Disability Rights California, California       CASE NO.: CV09-3664
   Protection and Advocacy Agency For
21 Persons With Disabilities,
22                                   Plaintiff    COMPLAINT FOR DECLARATORY
                                                  AND INJUNCTIVE RELIEF
23
24              v.
25 Sierra Vista Rehabilitation Center,            Dept:
26 SunBridge Healthcare Corporation              Judge:
                                                  Hearing Date and Time:
27                                  Defendants    Action Filed:
28

                                      1

## JURISDICTION

1.   This Court has jurisdiction over the claims brought herein pursuant to 28 U.S.C. § 1331 (West 2009) and 28 U.S.C. § 2201 (West 2009).

2.   Plaintiff brings its claims for access to information, records, and residents at the facility under the Protection and Advocacy for Individuals with Mental Illness Act (hereinafter "PAIMI"), 42 U.S.C. § 10801, *et seq.* (West 2009); the Developmental Disabilities Assistance and Bill of Rights Act (hereinafter "PADD"), 42 U.S.C. § 15001, *et seq.* (West 2009); and California Welfare and Institutions Code Section 4900 *et seq.* (West 2009). Supplemental jurisdiction over state law claims is allowed under 28 U.S.C. § 1367 (West 2009).

## PRELIMINARY STATEMENT

3.   This case involves Plaintiff's authority to access information and records pursuant to its probable cause determination that Defendant Sierra Vista staff use excessive force with behavioral restraint and that facility residents are at significant risk of unnecessary and inappropriate behavioral restraint, which can cause serious injury or death.

4.   Plaintiff, Disability Rights California (hereinafter "DRC"), brings this action against the Defendants, Sierra Vista Rehabilitation Center (hereinafter "Sierra Vista") and SunBridge Healthcare Corporation (hereinafter "SunBridge"), seeking to compel Defendants to provide to DRC information and records, including reports prepared by Defendants, in order that DRC may fulfill its statutory mandates under federal and state law.

5.   DRC has been mandated and designated as the Protection and Advocacy System for persons with disabilities in California under federal and state law.  This mandate arose due to the federally acknowledged vulnerability and resulting risk of abuse and neglect of persons with developmental and mental disabilities, particularly while residing in facilities.

6.   Current professional and medical standards suggest that the use of behavioral restraint and seclusion is a sign of treatment failure.   Further, behavioral restraint and seclusion are risky practices for any facility to undertake because when used inappropriately or excessively, these practices can lead to serious injury or death.  When restraint and seclusion are used inappropriately or excessively, such practices become abuse, which is criminally actionable.

7.   When abuse or neglect is reported to DRC or there is probable cause to believe that the incidents occurred, DRC has the authority as California's Protection and Advocacy System to access information, records, and reports prepared by Defendants in order to conduct a full investigation.

8.   Multiple residents at Sierra Vista have reported to DRC incidents of excessive or inappropriate use of restraints by facility staff toward them and other residents. DRC has reason to believe that these incidents have occurred and continue to occur at Sierra Vista. Further, DRC has reason to believe that there is significant risk of other residents being subject to such abuse at the facility.

9.   DRC is the final arbiter of probable cause for the purpose of triggering its access to information and records relevant to its abuse investigation.

10.   Pursuant to its full investigation into abuse, DRC has made repeated requests to Defendants for information and records, including reports prepared by facility staff concerning the incidence and types of behavioral restraint used at Sierra Vista. Defendants repeatedly have denied such requests in violation of federal statutes and implementing regulations as well as State law.

11.   As part of its mandate, DRC also has authority to access facilities, such as Sierra Vista, to provide information to residents, monitor compliance with respect to the rights and safety of residents, and investigate abuse or neglect of residents.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

12.   Defendants have delayed or denied DRC access to Sierra Vista and residents.

13.   DRC has been harmed as a result of Defendants illegal denial of access to both information and records and the facility and residents therein.  Its ability to conduct a full investigation has been impeded.  As a result, it has been forced to spend time and resources on repeated requests to little or no avail, thereby delaying its investigatory findings.

14.   DRC hereby seeks the following relief: 1) a declaratory judgment that Defendants, by refusing to provide DRC the requested reports, delaying or denying access to other information and records, and delaying or denying access to facility residents have violated federal and state law; 2) a preliminary and permanent injunction requiring Defendants to provide the requested access to records and residents at the facility; and 3) a preliminary and permanent injunction forbidding Defendants from interfering, in any way, with DRC's statutorily authorized access to facility reports and residents consistent with federal and state law.

## VENUE

15.   Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) (West 2009) as a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

## PARTIES

16.   Plaintiff DRC is a non-profit agency designated as California's Protection and Advocacy System for persons with disabilities pursuant to California Welfare and Institutions Code (hereinafter "Cal. Welf. & Inst. Code") Sections 4900(i) and 4901.  DRC has standing pursuant to an express private

right of action to enforce its authorizing statutes and to bring suit on behalf of its constituents.

17.    Defendant Sierra Vista is located in Highland, California, within San Bernardino County, and is licensed as a skilled nursing facility pursuant to California Health and Safety Code Section 1250; Title 22, California Code of Regulations, §§ 72001-72713.

18.    Based on information and belief, the facility is licensed for 116 beds, and has a Special Treatment Program that serves approximately 71 adults with mental health disabilities. Title 22, California Code of Regulations, §§ 72443-72475.  It also has a Specialized Behavioral Program that serves approximately 45 adults with developmental and mental health disabilities; both programs serve deaf and hearing-impaired adults.  Individuals who reside at Sierra Vista are from San Bernardino and other California counties.   Care for at least some of the residents at the facility is funded in part by Medicaid (Medi-Cal in California), and therefore the facility must comply with 42 U.S.C. Sections 1395-1395ggg and 1396-1396v, and federal regulations under 42 C.F.R. Parts 424 (2009) and 483 (2006).

19.    Defendant SunBridge is a corporation having headquarters in Irvine, California.  It operates Sierra Vista as well as at least 18 other Behavioral Health centers, six of which are also located in California.

## FACTS

20.    On October 17, 2008, a DRC staff member from the Peer and Self-Advocacy Unit (hereinafter "PSAU") was conducting a regularly scheduled group meeting with residents at Sierra Vista.  In the group meeting, residents reported excessive force being used by staff in events they termed as "wall slammings" and "take downs."

21.   On November 7, 2008, DRC Legal Unit staff accompanied a DRC PSAU staff member to her regular advocacy meeting with Sierra Vista residents. Also present at this meeting were representatives of the local Long-Term Care Ombudsman Program (See Cal. Welfare & Institutions Code §§ 9700 *et seq*.) and of the San Bernardino County Patient's Rights Advocate Office (*See* Cal. Welf. & Inst. Code §§ 5520-5523).

22.   Residents reported that excessive force was being used during "wall slammings" initiated by Sierra Vista staff with the following characteristics: 1) residents were pushed forcefully against the wall at a high elevation off the ground; 2) residents' limbs were forcefully pulled and spread against the wall; and 3) residents were then dropped to the floor on their knees.  Residents reported bruising, pain, general fear, and trauma.

23.   After the November 7, 2008 meeting, DRC Legal Unit staff began to investigate what the residents described as "Pro-Act" through on-line research. DRC staff learned that Professional Assault Crisis Training ("Pro-Act") was a method of crisis intervention that included restraint techniques only to be used as a last resort.  DRC also learned that these principles and techniques were used by multiple facilities other than Sierra Vista.

24.   Since DRC was receiving complaints about abusive incidents related to restraint practices and techniques at Sierra Vista, Plaintiff limited its investigation to polices, practices and techniques for use of behavioral restraint at Defendant Sierra Vista.

25.   As a result of DRC's on-going investigation and the two group meetings on October 17, 2008 and November 7, 2008 with residents reporting highly similar complaints, DRC opened a full investigation into possible abuse and neglect at Sierra Vista based on probable cause that facility residents had been subject to inappropriate restraint and excessive force in the use of restraint and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

that there was a significant risk of other residents being subject to such treatment at the facility. *See* 42 U.S.C. § 10805(a)(1)(A) [authority to investigate abuse and neglect];  42 C.F.R. § 51.2 (1997) [definitions of "abuse", "full investigation", and "probable cause"].

## LIMITATIONS ON RESTRAINT

### Federal Law

26.   Under federal law, Sierra Vista residents have the right to be free from physical or mental abuse, including any physical or chemical restraint imposed for purposes of discipline or convenience. 42 U.S.C. § 1396r(c)(1)(A)(ii); 42 U.S.C. § 290ii(a); 42 C.F.R. § 483.13(a) (1992).  Each "resident has the right to be free from verbal, sexual, physical, and mental abuse, corporal punishment, and involuntary seclusion." 42 C.F.R. § 483.13(b) (1992).

27.   Restraint and seclusion may only be imposed to ensure physical safety and upon a written order by a physician or other authorized medical provider that specifies duration and circumstances under which restraints are to be used. 42 U.S.C. § 290ii(b).

28.   Sierra Vista has a duty to "develop and implement written policies and procedures that prohibit mistreatment, neglect, and abuse of residents . . . ." 42 C.F.R. § 483.13(c) (1992).

29.   Defendants "must promote care for residents in a manner and in an environment that maintains or enhances each resident's dignity and respect in full recognition of his or her individuality." 42 C.F.R. § 483.15(a) (1992).

30.   Each Sierra Vista resident  "must receive and the facility must provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being . . . ." 42 C.F.R. § 483.25 (2005).

31.    Federal law shall not be construed to impede any state law or regulations that provide greater protections regarding restraint and seclusion.  42 U.S.C. § 290ii(c).

### State Law

32.    State law also provides that persons with psychiatric disabilities have a right to be free from harm, including unnecessary or excessive physical restraint or isolation.  Cal. Welf. & Inst. Code § 5325.1(c).

33.    Behavioral Restraint and/or seclusion may only be used for behavioral emergencies when a person's behavior presents an imminent danger of serious harm to self or others.  Cal. Health & Safety Code § 1180.4(b).

34.    Restraint and/or seclusion may only be used when alternative methods are not sufficient to protect the patient or others from injury. Cal. Code Regs. tit. 9, § 865.2(a).

35.    Restraint and/or seclusion must never be used as a punishment, for staff convenience, or as a substitute for a less restrictive alternative form of treatment. Cal. Code Regs. tit. 9, § 865.4(a); Cal. Code Regs. tit. 22, §§ 72319(d), 72527(a)(23).

36.    Restraint and/or seclusion may only be used for as long as necessary to protect the patient or others from injury and there is no less restrictive ways of protecting against such injury. Cal. Code Regs. tit. 9, §§ 865.4(a), 865.5.

37.    Restraint and/or seclusion may be imposed only upon written order of a physician, or in a legally defined emergency, upon telephone order by a physician within one hour of seclusion and/or restraint. Cal. Code Regs. tit. 22, § 72461(a).

38.    Use of restraint must be properly documented in the patient's medical records. Cal. Code Regs. tit. 22, § 72461(c); Cal. Code Regs. tit. 9, § 865.3.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

39.   Restraints shall be used in such a way so as not to cause physical injury to the patient.  Cal. Code Regs. tit. 22, § 72319(g).

40.   State law requires Defendants to adopt written policies and procedures regarding the use of manual and/or behavioral restraints at Sierra Vista, and to make such information available to facility residents.  Cal. Code Regs. tit. 22, §§ 72523, 72319, 72527; Cal. Health & Safety Code § 1599.1.

## INFORMATION REQUESTS & ON-GOING INVESTIGATION

41.   In a letter dated November 21, 2008 to Sierra Vista, DRC referenced the multiple reports of excessive physical force by facility staff, requested a meeting to discuss Pro-Act techniques and facility policies concerning physical contact between staff and residents, and requested copies of policies and procedures regarding the facility's use of Pro-Act restraint.  DRC stated that its goal was to inform residents of their rights in regards to restraint techniques being used at the facility, to ensure residents' rights to dignity and respect were upheld, and that the agency sought to address resident reports in a coordinated, pragmatic, and problem-solving manner consistent with 42 C.F.R. Section 51.32(a) (1997).

42.   Defendants' counsel sent a December 2, 2008 letter to DRC stating that they were gathering the requested Pro-Act policies and procedures and were considering whether or not to produce them.  They also requested client-specific information.

43.   DRC provided a written response the same day citing access authority under federal and state law, and referencing 42 C.F.R. Section 51.45(a)(1) (1997), which require protection of client name and information underlying a probable cause determination.

44.   On December 8, 2008, Defendants' counsel sent DRC the "Pro-Act procedures and materials" used at Sierra Vista as follows:  Pro-Act workshop

manual, Pro-Act Exercise Booklet, Pro-Act Restraint Certification, and Pro-Act Restraint Certification Exercise Booklet, which in total constitute 371 pages.

45.   Based on information and belief, Defendants have not adopted written policies and procedures for emergency use of behavioral restraints at Sierra Vista.  The facility was found out of compliance with state law and regulations on the issue by the State Department of Mental Health and by the Riverside County Patients' Rights Advocates Office in 2005 and 2007, respectively.

46.   Based on information and belief, the above-referenced Pro-Act procedures and materials used at Sierra Vista do not constitute the requisite facility policies and procedures for use of behavioral and/or manual restraints, and the behavioral restraint techniques employed by facility staff are inconsistent with professional standards.

47.   Defendants' counsel and DRC arranged a meeting at Sierra Vista on December 18, 2008 for a discussion among DRC staff, Sierra Vista and SunBridge staff, and a representative of the San Bernardino County Patients' Rights Office on use of restraint at the facility.  Defendants' counsel requested, and DRC agreed, that "all statements made at the meeting" would be covered by applicable settlement privileges, including but not limited to California Evidence Code section 1152 and Rule 408 of the Federal Rules of Evidence.

48.   On December 26, 2008, DRC sent a written request to Defendants for information and records, including reports prepared by Defendants on "data from January 1, 2008 to the present regarding the number of restraint incidents at Sierra Vista, by type of restraint used and facility program."  DRC also therein requested the following information and records used at the facility:  Psychiatric Advance Directive form, and policies and procedures for its completion; Adverse Report form, and policies and procedures for its completion; Notable Incident Report form, and policies and procedures for its completion; and Forms for

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Documentation, Debriefing and Evaluation of the use of restraint, and policies and procedures for their completion.

49.    On January 16, 2008, DRC received from the San Bernardino County Patients' Rights Office copies of Sierra Vista's "Denial of Rights/Seclusion and Restraint Monthly Reports" for the year of 2008. For the entire year of 2008, Defendants reported only 3 incidents of restraint on the Denial of Rights Reports.

50.    Based on information and belief, hundreds of restraint incidents likely took place at Sierra Vista in 2008.

51.    On February 6, 2009, Defendants' counsel sent a letter stating they would supply most of the information and records requested in DRC's December 26, 2008 letter, but refused to provide information or reports on restraint incidents at the facility, stating: "the collection and reporting of such data is covered by state and federal peer review and quality assurance privileges."   Defendants produced documents on February 13 but failed to provide behavioral restraint incident data for 2008.

52.    On February 24, 2009 DRC renewed the request for restraint incident data, pointing out that such information or reports were not covered by peer review statutes and, even if they were, that Protection and Advocacy Systems such as DRC have access to peer review records under federal and state law.

53.    DRC also continued to review client medical records.  In reviewing these medical records, DRC staff noticed that in some instances the Psychiatric Advance Directives, which include statements of preference by residents for specific and individualized crisis intervention techniques, appeared not to be used by staff prior to use of so-called Pro-Act restraint techniques.

54.    DRC also found that the Notable Incident Form, the Adverse Incident Form, and the other restraint debriefing forms were not present in the client medical records.

55.   In a letter dated March 11, 2009, Sierra Vista again denied DRC's request for restraint incident information or reports, this time referencing 42 C.F.R. § 483.75(o)(3) (2003), which relates to information developed by members of a nursing facility's quality assessment and assurance committee.

56.   On March 20, 2009, DRC renewed its request for restraint incident information or reports, asking that the time period be expanded from January 1, 2008 to February 28, 2009 due to the amount of time that had elapsed, and explaining why 42 C.F.R. Section 483.75(o)(3) (2003) did not apply.   Further, DRC broadened its request to include the following records for the period of January 1, 2008 to February 28, 2009 with resident identifying information redacted:

   a.   Psychiatric Advance Directives completed by residents;

   b.   P.A.R.T. Debriefing forms completed by facility staff;

   c.   Behavioral Restraint(s) Debriefing & Resolution forms completed by facility staff;

   d.   Interview Narrative Records completed by facility staff;

   e.   Notable Incident Reports completed by facility staff;

   f.   Restraint log(s) kept by the facility including but not limited to that required under Title 22, Cal. Code Regs., § 72461(b); and

   g.   The names of all facility staff trained on the use of restraints, including so-called Pro-Act restraints, the date of such training, and copies of the training materials.

57.   In its March 20, 2009 letter to Defendants, DRC reiterated its desire to work with Defendants in a coordinated, pragmatic and problem-solving fashion toward resolution of the concerns brought to light by facility residents.   DRC proposed working with Defendants to:   (a) establish facility policies and procedures on the right of residents to be free from unnecessary or excessive

physical restraint; (b) train facility staff; (c) provide information and training to residents, and (d) monitor restraint usage.  At the same time, DRC stated that it would  "have no option but to seek judicial resolution" if Defendants declined to provide the requested information and records.

58.   In an April 6, 2009 letter, DRC requested that Defendants provide a written explanation as required under 29 U.S.C. Section 794e(f)(2) and 45 C.F.R. Section 1386.22(i) (1996) if they had decided not to provide the requested information and records.

59.   In an April 8, 2009 letter, DRC requested access to Sierra Vista residents for the provision of information about individual rights and the services available from the agency, and monitor conditions at the facility.  The request was for reasonable unaccompanied access to all areas of the facility used by residents, including but not limited to patio areas during break times and otherwise used by residents.  The request was for access to all residents of the facility, and in particular residents who were deaf or had hearing impairments, on Friday, April 17, 2009, from 11 am to 3 pm. Cal. Welf. & Inst. Code § 4902(a)(3); PAIMI, 42 U.S.C. § 10801 *et seq.*; PADD, 42 U.S.C. § 15001 *et seq.*.

60.   Defendants' counsel denied DRC's access to the facility in an e-mail on April 10, 2009, stating "I can tell you right now that an April 17 visit will not work.  I will get back to you with alternative dates . . . ."

61.   On April 27, 2009, Defendants' counsel wrote a response to DRC's April 8, 2009 request for reasonable unaccompanied access to Sierra Vista and the residents therein.  Defendants' counsel proposed a meeting to "meet and confer . . . to develop a protocol for [reasonable] access."

62.   DRC sent a letter dated May 13, 2009 to Defendants stating its willingness to discuss its access authority to the facility and residents therein upon Defendants' commitment to respect DRC's facility access authority under

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

federal and state law.  In addition, DRC requested alternative dates as promised in the April 10, 2009 e-mail from Defendants' counsel.  DRC also reserved the right to ensure its authority.

63.    Defendants' counsel replied to DRC's May 13, 2009 letter regarding access to the facility and residents with a letter dated May 20, 2009.  In this letter, Defendants' counsel stated their intent to "comply with applicable law regarding DRC's right of access to Sierra Vista, but then went on to lay out several "terms and conditions" under which DRC would be permitted to access Sierra Vista.  The stated conditions went beyond what statutes, regulations, and case law have determined to be reasonable restrictions on DRC's right to access a facility providing information to residents, monitoring the safety of residents, and the facility's compliance with laws or investigating a report of possible abuse or neglect.

64.    In a separate April 27, 2009 letter, Defendants declined to produce any of the information requested by DRC in its March 20, 2009 letter.  Defendants again asserted that data regarding the number of restraint incidents at the facility was protected as facility quality assessment and assurance committee records. In addition, restraint data and all of the other requested reports were deemed "beyond the scope of the authority granted to protection and advocacy systems such as DRC."  Defendants claim that the "plain language of [federal and state] statutes and regulations . . . precludes DRC from obtaining general information about the facility and its operations."  Finally, Defendants asserted that DRC "does not have the right to access any [staff] training materials or data regarding [staff] training" on use of restraints.

65.   On May 15, 2009, DRC requested that Defendants promptly provide information on the number of Sierra Vista residents between January 1, 2008 and February 28, 2009, and the names, addresses and phone numbers for the

guardians, conservators or other legal representatives of such individuals, pursuant to 42 C.F.R. §§ 51.41(a), 51.43 (1997); 45 C.F.R. § 1386.22(i) (1996).

66.    As a result of Defendants' refusal to provide information and records, including reports prepared by facility staff, DRC is unable to complete its statutorily mandated abuse investigation into the use of behavioral restraints at Sierra Vista.   DRC deems data regarding the frequency and pervasiveness of behavioral/physical restraint necessary to its full investigation into abuse at the facility.    Absent this aggregate data, DRC is unable to carry out potential advocacy to implement changes in and inform residents of facility practices, issue public reports on restraint incidents across facility programs, monitor trends in restraint usage, and protect the rights of all Sierra Vista residents.   In addition, Defendants' denial of and delay in DRC's access to the facility and residents therein undermines DRC's ability both to provide information to residents about their rights and to monitor facility compliance with respect to the rights and safety of residents.

## CLAIMS FOR RELIEF

### First Claim for Relief—Violation of the Protection and Advocacy for Individuals with Mental Illness Act (PAIMI)

### (Access to Individual and General Information, Records, and Reports)

67.    DRC incorporates and re-alleges paragraphs 1 through 66, as if fully set forth herein.

68.    42 U.S.C. § 10805(a)(1)(a) authorizes DRC as the protection and advocacy system for California to investigate incidents of abuse and neglect of individuals with mental illness if such incidents are reported to DRC or when DRC has probable cause to believe that incidents of abuse or neglect have occurred.

69.    Defendants have an obligation to provide all records of any individual who has authorized DRC to have such access under 42 U.S.C. § 10805(a)(4)(A);

42 C.F.R. § 51.41(b)(1) (1997).  *See also* 42 C.F.R. § 51.41(d) (1997) (providing that DRC shall have "reasonable access and authority to interview and examine all relevant records of any facility service recipient").

70.    Defendants have an additional obligation to provide general reports prepared by or for the facility itself that describe incidents of abuse, neglect, or injury taking place at the facility; steps taken to investigate such incidents; relevant personnel records regarding such incidents; and other supporting information relied upon in creating such a report.  42 C.F.R. § 51.41(c)(2) (1997). Such information includes restraint incident data when DRC has probable cause to suspect that restraint practices result in injury, abuse, or neglect.  *See also* 42 U.S.C. § 10806(b)(3)(A) (defining "records" broadly to include "reports" prepared by any staff of a facility).

71.    Additionally, Defendants have an obligation to provide general "demographic and statistical information" relating to the facility's restraint practices.  *See* 42 C.F.R. § 51.41(c)(5).

72.    Further, Defendants have an obligation to provide assessments prepared by its staff, contractors, or related entities regarding the use of restraint. *See* 42 C.F.R. § 51.41(c)(4).

73.    By refusing to provide DRC access to requested information, records, and reports Defendants have violated the PAIMI Act and the regulations promulgated pursuant to the statute.

74.    DRC has no adequate remedy at law.

### Second Claim for Relief—Violation of the Protection and Advocacy for Individuals with Developmental Disabilities Act (PADD) (Access to Individual and General Information, Records, and Reports)

75.    DRC incorporates and re-alleges paragraphs 1 through 74, as if fully set forth herein.

76.   42 U.S.C. § 15043(a)(2)(B) authorizes DRC as the protection and advocacy system for California to investigate incidents of abuse and neglect of individuals with developmental disabilities if such incidents are reported to DRC or when DRC has probable cause to suspect that incidents of abuse or neglect have occurred.

77.   Defendants have an obligation to provide all records of any individual who has authorized DRC to have such access under 42 U.S.C. § 15043(a)(2)(I)(i) and 45 C.F.R. § 1386.22(a) (1996).

78.   Defendants have an additional obligation to provide general reports prepared by or for the facility itself that describe incidents of abuse, neglect, or injury taking place at the facility; steps taken to investigate such incidents; relevant personnel records regarding such incidents; and other supporting information relied upon in creating such a report.   45 C.F.R. § 1386.22(b)(2) (1996).  Such information includes restraint incident data when DRC has probable cause to believe that restraint practices result in injury, abuse, or neglect.  *See also* 42 U.S.C. § 15043(c) (defining "record" broadly to include a "report" prepared by any staff of a facility).

79.   Additionally, Defendants have an obligation to provide general "demographic and statistical information" relating to the facility's restraint practices.  *See* 45 C.F.R. § 1386.22(c)(2) (1996).

80.   Further, Defendants have an obligation to provide assessments prepared by its staff, contractors, or related entities regarding the use of restraint.  *See* 45 C.F.R. § 1386.22(c)(1) (1996).

81.   By refusing to provide DRC access to requested information, records, and reports Defendants have violated the PADD Act and the regulations promulgated pursuant to the statute.

82.   DRC has no adequate remedy at law.

## Third Claim for Relief—Supplemental State Law
## (Access to Individual and General Information, Records, and Reports)

83.   DRC incorporates and re-alleges paragraphs 1 through 82, as if fully set forth herein.

84.   Cal. Welf. & Inst. Code § 4902(a)(1) authorizes DRC as the protection and advocacy system for California to investigate incidents of abuse and neglect of individuals with mental illness if such incidents are reported to DRC or when DRC has probable cause to believe that incidents of abuse or neglect have occurred.

85.   Defendants have an obligation to provide all individual records concerning the alleged abuse under Cal. Welf. & Inst. Code § 4903(a)(1).

86.   Defendants have an additional obligation to provide general reports prepared by or for the facility itself that describe incidents of abuse, neglect, or injury taking place at the facility; steps taken to investigate such incidents; relevant personnel records regarding such incidents; and other supporting information relied upon in creating such a report.   Cal. Welf. & Inst. Code § 4903(b)(2).   Such information includes restraint incident data when DRC has probable cause to suspect that restraint practices result in injury, abuse, or neglect.

87.   Additionally, Defendants have an obligation to provide general "demographic and statistical information" relating to the facility's restraint practices.   *See* Cal. Welf. & Inst. Code § 4903(c)(2).

88.   Further, Defendants have an obligation to provide assessments prepared by its staff, contractors, or related entities regarding the use of restraint. *See* Cal. Welf. & Inst. Code § 4903(c)(1).

89.   By refusing to provide DRC access to requested information, records, and reports Defendants have violated state law.

90.   DRC has no adequate remedy at law.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### Fourth Claim for Relief—Violation of PAIMI Act
### (Provision of Access to Residents at Facilities)

91.    DRC incorporates and re-alleges paragraphs 1 through 90, as if fully set forth herein.

92.    DRC has authority to access facilities in California providing care and treatment authority to provide information to individuals with mental health disabilities, monitor their well-being and investigate significant risk of abuse or neglect in accordance with 42 U.S.C. § 10805(a)(3).   Defendants have an obligation to provide DRC reasonable unaccompanied access to Sierra Vista, and to recipients of services therein under 42 C.F.R. § 51.42 (1997).

93.    By refusing to allow DRC reasonable unaccompanied access to Sierra Vista and residents therein, Defendants have violated the PAIMI Act and its implementing regulations.

94.    DRC has no adequate remedy at law.

### Fifth Claim for Relief—Violation of PADD Act
### (Provision of Access to Residents at Facilities)

95.    DRC incorporates and re-alleges paragraphs 1 through 94, as if fully set forth herein.

96.    DRC has authority to provide information to individuals with developmental disabilities, monitor their well-being and investigate significant risk of abuse or neglect in accordance with 42 U.S.C. § 15043(a)(2)(A)(ii). Defendants have an obligation to provide DRC reasonable unaccompanied access to Sierra Vista, and to individuals with developmental disabilities therein under 45 C.F.R. § 1386.22(g) (1996).

97.    By refusing to allow DRC reasonable unaccompanied access to Sierra Vista and residents therein, Defendants have violated the PADD Act and its implementing regulations.

98.    DRC has no adequate remedy at law.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### Sixth Claim for Relief—Supplemental State Law
### (Provision of Access to Residents at Facilities)

99. DRC incorporates and re-alleges paragraphs 1 through 98, as if fully set forth herein.

100. Cal. Welf. & Inst. Code § 4902(a)(3) authorizes DRC to provide information to Sierra Vista residents, monitor their well-being and investigate significant risk of abuse and neglect.

101. Defendants have an obligation to provide reasonable unaccompanied access to Sierra Vista, and to recipients of services therein under Cal. Welf. & Inst. Code §§ 4902(b), 4902(b)(2).

102. By refusing to allow DRC reasonable unaccompanied access to Sierra Vista and residents therein, Defendants have violated State law.

103. DRC has no adequate remedy at law.

### Seventh Claim for Relief—Violation of PAIMI and PADD Acts
### (Prompt Notice of Delay or Denial in Access)

104. DRC incorporates and re-alleges paragraphs 1 through 103, as if fully set forth herein.

105. Defendants have a duty to provide DRC with a written statement of reasons for delay or denial of access to Sierra Vista and residents or information and records therein under 42 C.F.R. § 51.43 (1997) and 45 C.F.R. § 1386.22(i) (1996).

106. Defendants have failed to provide promptly a written statement of reasons for denial of DRC's access to restraint incident data and other records, and for delay or denial of DRC's access to the Sierra Vista and residents therein.

107. By refusing to provide DRC prompt denial or delay notice of reasons, Defendants have violated federal law.

108. DRC has no adequate remedy at law.

### Eighth Claim for Relief—Supplemental State Law
### (Prompt Notice of Delay or Denial in Access)

109.  DRC incorporates and re-alleges paragraphs 1 through 108, as if fully set forth herein.

110.  Defendants have a duty to provide promptly a written statement of reasons for delay or denial in DRC's access to records or a facility under Cal. Welf. & Inst. Code § 4902(c).

111.  Defendants have failed to provide promptly a written statement of reasons for denial of DRC's access to restraint incident data and other records, and for delay or denial of DRC's access to the Sierra Vista and residents therein.

112.  By refusing to provide DRC prompt access denial or delay notice, Defendants have violated State law.

113.  DRC has no adequate remedy at law.

### INJUNCTIVE RELIEF

114.  DRC repeats, reiterates, and realleges all of the foregoing, as if fully set forth herein.

115.  DRC has standing to bring this action on its own behalf, because the refusal of access by defendants constitutes an injury in fact to DRC's legally-protected interests and the interests of its constituents.  This injury is concrete, particularized, actual, and imminent.  There is a causal relationship between the injury and Defendants' challenged conduct, and a favorable decision by this Court will address the injury.

116.  Due to Defendants' violation of the PAIMI and PADD Acts, as well as the Cal. Welf. & Inst. Code, DRC is irreparably harmed as it is prevented from carrying out its responsibilities under those Acts.

117.  Further, due to Defendants' violation of the PAIMI and PADD Acts, as well as Cal. Welf. & Inst. Code, Sierra Vista residents are irreparably harmed because they are denied access to DRC for information about their legal rights,

they are denied the opportunity for DRC to monitor health and safety conditions at the facility, and they are denied DRC's full investigation into probable cause to suspect abuse at the facility.

118. Unless Defendants are enjoined to provide to DRC the access required by federal and state law, DRC and its constituents will continue to be irreparably harmed as DRC will be unable to protect and advocate for persons with disabilities consistent with federal and state law.

## PRAYER FOR RELIEF

119. Wherefore, DRC, California's Protection and Advocacy System, respectfully prays that this Court grant it the following relief:

a.  Enter a declaratory judgment that Defendants' refusal to provide the records requested, including but not limited to restraint incident data, by DRC is in violation PAIMI and PADD Acts, as well as the Cal. Welf. & Inst. Code.

b.  Preliminarily and permanently enjoin Defendants to provide to DRC the access to information and records, including reports prepared by facility staff, mandated by federal and state law.

c.  Preliminarily and permanently enjoin Defendants from interfering, in any way, with DRC's access to records.

d.  Preliminarily and permanently enjoin Defendants to provide DRC reasonable unaccompanied access to Sierra Vista and residents therein as mandated by federal and state law.

e.  Preliminarily and permanently enjoin Defendants from interfering, in any way, with DRC's access to Sierra Vista and residents therein.

/ / /

/ / /

/ / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

f.     Grant DRC such other and further relief which to this Court
seems just and proper.

Dated:  May 21, 2009                    Respectfully submitted,


                                        Disability Rights California


                                        By: _____
                                             Michael Stortz, SBN 153378
                                             Attorney for Plaintiff