FILED

1
2  Michael Stortz, SBN 153378
   Maria Iriarte, SBN 150704
3  Disability Rights California
   San Diego Regional Office
4  1111 Sixth Avenue, Suite 200
5  San Diego, CA 92101
   (619) 239-7861
6  Fax (619) 239-7906
7  Michael.Stortz@disabilityrightsca.org
   Maria.Iriarte@disabilityrightsca.org
8
9  Kevin Bayley, SBN 218070
   Rachel Scherer, SBN 260538
10 Disability Rights California
11 Los Angeles Regional Office
   3580 Wilshire Blvd., #902
12 Los Angeles, CA 90010
13 (213) 427-8747
   Fax (213) 427-8767
14 Kevin.Bayley@disabilityrightsca.org
15 Rachel.Scherer@disabilityrightsca.org

16 Attorneys for Plaintiff

17

2009 MAY 22  AM 10: 41

CLERK U.S. DISTRICT COURT
CENTRAL DIST. O   CALIF.
LOS ANGELES

BY_____

18          UNITED STATES DISTRICT COURT
          CENTRAL DISTRICT OF CALIFORNIA
19              WESTERN DIVISION

20 Disability Rights California, California
21 Protection and Advocacy Agency For
   Persons With Disabilities,
22
                              Plaintiff,
23
              v.
24
25 Sierra Vista Rehabilitation Center,
26 SunBridge Healthcare Corporation
27
28                           Defendants

CASE NO.: CV09-3664 VBF (FFMx)

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

Dept:
Judge:
Hearing Date and Time:
Action Filed:

# TABLE OF CONTENTS

FACTS..................................................................................................2

ARGUMENT .........................................................................................5

I.   PLAINTIFF IS ENTITLED TO PRELIMINARY INJUNCTION
     BECAUSE THE FOUR TRADITIONAL EQUITABLE CRITERIA
     WEIGH STRONGLY IN ITS FAVOR...................................................5

     A.   DRC Is Likely to Succeed on the Merits Because
          Access to Records, Information, and Residents
          is Part of its Federal and State Mandates ....................................6

          1.   Plaintiff is Authorized to Access
               All Relevant Records and Information
               Pursuant to Its Determination of Probable Cause
               of Abuse Under Federal and State Law ...............................7

          2.   Plaintiff has Authority to Access Sierra Vista
               and Its Residents Pursuant to its State and Federal
               Mandate as the Protection and Advocacy Agency .............17

          3.   Plaintiff has Rights to Prompt Access to Records
               and Residents at the facility Pursuant
               to its State and Federal Mandates
               as the Protection and Advocacy Agency .............................20

     B.   Plaintiff Is Suffering Irreparable Injury
          and Will Continue to Do So Unless the Court
          Grants the Motion for Preliminary Injunction .............................21

     C.   The Balance of Hardships Favors Plaintiff.................................22

     D.   The Public Interest Will be Advanced
          by the Grant of Preliminary Relief ............................................24

CONCLUSION....................................................................................25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

## Federal Cases

Advocacy Center v. Stadler,
    128 F.Supp.2d 358, 368 (M.D. La. 1999) ........................................24

Alabama Disabilities Advocacy Program v.
    J.S. Tarwater Developmental Ctr.,
    97 F.3d 492, 494 (11th Cir. 1996) ................................................6, 16

Arizona Center for Disability Law v. Allen,
    197 F.R.D. 689, 691, 693 (D. Ariz. 2000) ...................................1, 14

Center for Legal Advocacy v. Hammons,
    323 F. 3d 1262, 1270 (10th Cir. 2003) .........................................16

Equip for Equality, Inc. v. Ingalls Memorial Hosp.,
    292 F.Supp.2d 1086, 1101(N.D.Ill. 2003) ....................................19

Iowa Protection and Advocacy Servs., Inc.
    v. Gerard Treatment Programs,
    152 F.Supp.2d 1150, 1171-72, 1176 (N.D. Iowa 2001) ..............14, 21

Mississippi Protection & Advocacy System, Inc. v. Cotten,
    929 F.2d 1054, 1058 (5th Cir. 1991) ...........................................24

Missouri Protection & Advocacy Services
    v. Missouri Dep't Mental Health,
    447 F.3d 1021, 1024 (8th Cir. 2006) ...........................................16

Ohio Legal Rights Services v. The Buckeye Ranch, 365 F.Supp.2d 877,
    887 (S.D. Ohio 2005) ................................................................11

Owner-Operator Independent Drivers Ass'n, v. Swift Transp. Co.
    367 F.3d 1108, 1111 (9th Cir. 2004) ..............................................5

Pennsylvania Protection & Advocacy, Inc. v. Houstoun,
    228 F.3d 423, 428 (3d Cir. 2000) ...............................................15

Protection & Advocacy for Persons with Disabilities
    v. Mental Health & Addiction Servs.,

- ii -

448 F.3d 119, 128 (2d Cir. 2006) ...................................................16

Robbins v. Budke, 739 F.Supp. 1479 (D.N.M. 1990) ............................19

State of Connecticut Office of Protection and Advocacy
   for Persons with Disabilities v. Hartford Bd. Educ.,
   355 F.Supp.2d 649, 664 (D. Conn 2005)
   aff'd. 464 F.3d 229, 234 (2d Cir. 2006)....................................20, 21

Wisconsin Coalition for Advocacy v. Czaplewski,
   131 F.Supp.2d 1039, 1051 (E.D. Wis. 2001).............................21, 24

**Federal Statutes**

United States Code

42 U.S.C. §§ 10801, et seq. (PAIMI ACT)....................................1
42 U.S.C. § 10802(3) ................................................................7
42 U.S.C. § 10805(a)(1)(A)&(B),(3)..............................................6
42 U.S.C. § 10805(a)(4)(A) ........................................................8
42 U.S.C. § 10806(b)(3)(A) ........................................................8
42 U.S.C. § 15043(a)(2)(A)(ii),(B),&(H) (PADD ACT).....................6
42 U.S.C. § 15043(c)(1) .............................................................8

42 U.S.C.§§ 15001et seq. ......................................................1, 6,
42 U.S.C.§§ 15001-15115 ..........................................................6
42 U.S.C. § 15041 ....................................................................1
42 U.S.C. § 15043(a)(I)(i).............................................................7
42 U.S.C. § 15043(a)(J)(i).............................................................8
42 U.S.C. §§ 15043(a)(2)(I), (J), & (c) ...................................6, 20
42 U.S.C. § 1395i-3(b)(1)(B) ......................................................12
42 U.S.C. § 1396r(c)(1)(A)(ii) .....................................................23
42 U.S.C. § 1396r(c)(2)(B)(iii)(III)&(IV) .................................16, 20
42 U.S.C. § 1396r(b)(1)(B) ........................................................12

**Federal Regulations**

Code of Federal Regulations

42 C.F.R. § 51.2 (1997) (PAIMI ACT) .......................................1,7
42 C.F.R. § 51.32(a) (1997) ........................................................2
42 C.F.R. § 51.41 (1997) ............................................................8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

42 C.F.R. §§ 51.42(b), (c) and (d) ..............................................19
42 C.F.R. §§ 51.43 ....................................................................20
42 C.F.R. § 483.10(j)(v) ......................................................16, 20
42 C.F.R. § 483.10(j)(vi) .....................................................16, 20
42 C.F.R. § 483.75(o)(3) (2006) ...............................................12
42 C.F.R. § 489.102(a) ..............................................................14
42 C.F.R. §§ 51.42(b) ................................................................18
51.42(c)(1)&(2) (1997) ..............................................................18
C.F.R. § 1366.22(f)&(g) (1996) .................................................18
45 C.F.R. § 1386.19 (1996) (PADD ACT) ...................................7
45 C.F.R . § 1386.22 (1996)..........................7, 8, 18, 19, 20

## State Cases

Hale v. Odd Fellow & Rebekah Health Care Facility,
    728 N.Y.S.2d 649, 651 (App. Div. 2001) ...........................13

In the Mattter of Subpoena Duces Tecum to Jane Doe,
    99 N.Y.2d 434, 436 (N.Y. 2003) .......................................13

State ex rel. Boone Retirement Ctr. v. Hamilton,
    946 S.W.2d 740, 743 (Mo. 1997) .....................................12

## State Statutes

Cal. Health & Safety Code
    § 1180 (Historical and Statutory Notes)................................1
    § 1180.2(d)(3)(E) ..................................................................13
    & 1180.3(c)(4).......................................................................13
    §1180.4(a)(1) ........................................................................14
    1180.5(a)-(d) .........................................................................15

California Welfare and Institutions Code
    § 4900.....................................................................................1
    § 4900(d) ................................................................................7
    § 4900(g) ................................................................................7
    § 4900(j)................................................................................20
    § 4900(h) ................................................................................7
    § 4902(b) .........................................................................18, 20
    § 5325.1(c)............................................................................23

## State Regulations

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

California Code of Regulations
Tit. 9, § 865.3................................................................13, 15
Tit. 9, § 866..................................................................14
Title 22, § 72461(b).....................................................10, 13, 15
Tit. 22, §72521(c)(6)....................................................14
Tit. 22, § 72541............................................................14

**Other Authority**
S.B. 130, ch. 750 at 2 § 1(a) (Cal. 2003) (enacted) (codified at Cal.
Health & Safety Code § 1180)............................................11

This case involves Plaintiff Disability Rights California's (DRC's) investigation into abuse by Defendants based on individual reports of excessive force in behavioral restraint and probable cause to suspect all Defendant Sierra Vista residents are at significant risk of excessive and inappropriate behavioral restraint. Behavioral restraint and seclusion are practices that can cause serious injury, even death. The California Legislature has declared that the "use of seclusion and behavioral restraints is not treatment, and their use does not alleviate human suffering or positively change behavior." *See* ch. 750, 2003 Cal. Legis. Servs. 89, §1(a) (codified at Cal. Health & Safety Code § 1180) (statement of legislative findings).

DRC is a nonprofit corporation authorized by Congress to protect and advocate for the civil rights of persons with disabilities in California, and is the designated Protection and Advocacy (P&A) System in the State of California. (42 U.S.C. §§ 10801 *et seq.* (West 2009), 42 U.S.C. §§ 15001 *et seq.*(West 2009), and California Welfare and Institutions Code §§ 4900 *et seq.* (West 2009).) As such, DRC's federal and state mandate is to protect and advocate for people with disabilities. As part of its mandate, Plaintiff has the authority to access all relevant records, including all reports prepared by facility staff, for the purpose of conducting a full investigation into abuse or neglect. Such an abuse investigation may be based on reports of abuse at the facility by residents therein or a probable cause determination by the protection and advocacy agency to suspect abuse. With respect to probable cause determination, Plaintiff, as the protection and advocacy system, is the final arbiter of probable cause of abuse as defined under 42 C.F.R. § 51.2. *See Arizona Center for Disability Law v. Allen*, 197 F.R.D. 689, 693 (D. Ariz. 2000).

Pursuant to its full investigation into abuse at Defendants' facility, DRC has made multiple written requests for information and records, as well as a request

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

for access to the facility and residents therein.  Defendants have denied Plaintiff's access both to information and records and to Defendant Sierra Vista and residents therein.  Defendants' refusals have caused direct injury to DRC and the individuals it is mandated to service, and will continue to cause such irreparable harm unless Plaintiff's Motion for Preliminary Injunction is granted.

## FACTS

To further its abuse investigation and gain knowledge of the practices and procedures used at the facility, DRC sent Defendant Sierra Vista a letter dated November 21, 2008 referencing multiple reports of excessive physical force by facility staff and requesting facility policies and procedures for use of behavioral restraints.  DRC stated its goal was to inform residents of their rights concerning the facility's use of restraint and to ensure residents' rights to dignity and respect. It sought resolution of the matter consistent with 42 C.F.R. § 51.32(a) (1997). (Declaration of Kevin Bayley (Bayley Dec.) , Exhibit 1 at pp. 13-14).

Defendants' counsel responded in a letter dated December 2, 2009 stating that they were gathering the requested restraint policies and procedures and were considering whether to produce them.  Defendants' counsel also requested client specific information. (Bayley Dec., Exhibit 2 at pp. 15-16).

DRC replied that day citing its obligation to protect client name and information underlying a determination of probable cause to investigate abuse at the facility. (Bayley Dec., Exhibit 3 at pp. 17-18).

On December 8, 2008 Defendants produced their restraint "procedures and materials" used by staff at Defendant Sierra Vista. (Bayley Dec., Exhibit 5 at pp. 20-21).

On December 26, 2008, DRC sent a letter to Defendants requesting copies of various facility forms, policies and procedures and "data from January 1, 2008 to the present regarding the number of restraint incidents at Sierra  Vista, by type

2

of restraint used and facility program." (Bayley Dec., Exhibit 6 at pp. 22-24).

In a letter dated February 6, 2008, Defendants responded by stating that they would supply most of the requested information and records but that they would not provide restraint incident information or records because "the collection and reporting of such data is covered by state and federal peer review and quality assurance privileges." (Bayley Dec., Exhibit 9 at p. 31).  Defendants provided most of the other requested information under cover letter on February 13, 2009. (Bayley Dec., Exhibits 10-23 at pp. 32-174).)

In a letter dated February 24, 2009, DRC reiterated its request for restraint incident data pointing out that such information or reports were not covered by peer review statutes and, even if they were, that protection and advocacy systems such as DRC had access to peer review records under federal and state law. (Bayley Dec., Exhibit 24 at pp. 175-176).

In a letter dated March 11, 2009, Defendants once again denied DRC's request for restraint incident data stating that such information or records were protected from disclosure under a federal regulation regarding information developed by members of a nursing facility's quality assessment and assurance committee. (Bayley Dec., Exhibit 25 at p. 177).

DRC's response, dated March 20, 2009, explained why the federal regulation cited by Defendants was no shield to DRC's access to the requested information or records given its congressional authority, renewed its request for restraint incident data from January 1, 2008 to February 28, 2009 and requested additional records. DRC again offered to work with Defendants to establish facility policies and procedures on the right of residents to be free from unnecessary or excessive behavioral restraint, to provide for staff training, to provide for information and training to residents on their rights, and to monitor restraint usage at the facility. (Bayley Dec. Exhibit 26 at pp. 178-183).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

In a letter dated April 6, 2009, DRC requested that Defendants provide a written explanation of their denial of its access to requested records. (Bayley Dec., Exhibit 27, at pp. 184).

In a letter dated April 8, 2009, DRC requested access to Defendant's facility and residents on April 17, 2009 (giving Defendant Sierra Vista over a week of advance notice) in order to provide information about individual rights and the advocacy services, and also to monitor conditions at the facility. (Bayley Dec., Exhibit 28, at pp. 185-186).

In an e-mail from Defendant's counsel, Defendants denied DRC's request for access to Defendant Sierra Vista on April 17, 2009 and stated they would propose alternative dates. (Bayley Dec., Exhibit 29, at pp. 187-188).

Defendants' counsel sent a letter dated April 27, 2009 to DRC denying access and proposing a meet and confer to develop an access protocol. (Bayley Dec., Exhibit 30 at p. 189).

In a separate letter dated April 27, 2009, Defendants declined to produce any of the information and records requested by DRC on March 20, 2009 again citing the federal regulation related to records of a nursing facility's quality assessment and assurance committee.  In addition, Defendants indicated that the restraint data and all of the other requested reports were deemed "beyond the scope of the authority granted to protection and advocacy agencies such as DRC."  They claimed that the "plain language of [federal and state] statutes and regulations . . . precludes DRC from obtaining general information about the facility and its operations."  Defendant's counsel also asserted that DRC "does not have the right to access any [staff] training materials or data regarding [staff] training" on use of restraints. (Bayley Dec., Exhibit 33, at pp. 195-197).

In response to Defendants letter of April 27, 2009, DRC sent a written request for the names, addresses and telephone numbers concerning Sierra

Vista residents. (Bayley Dec., Exhibit 34, at p. 198).

DRC sent a letter dated May 13, 2009 to Defendants stating its willingness to discuss the details of its access to Sierra Vista and residents therein, but also seeking assurance of its access authority under federal and state law. (Bayley Dec., Exhibit 31, at pp. 190-191).

In a letter dated May 20, 2009, Defendants acknowledged DRC's right of access but then went on in essence to deny access to residents at the facility by placing restrictive terms and conditions upon a proposed visit that are contrary to DRC's rights of access under state and federal law.  (Bayley Dec., Exhibit 32, at pp. 193-194).

## ARGUMENT

I.  **PLAINTIFF IS ENTITLED TO PRELIMINARY INJUNCTION BECAUSE THE FOUR TRADITIONAL EQUITABLE CRITERIA WEIGH STRONGLY IN ITS FAVOR**

The four "traditional equitable criteria" for granting a preliminary injunctive are: (1) the moving party has a likelihood of success on the merits, (2) there is a possibility of irreparable harm to the moving party if relief is not granted, (3) the extent to which the balance of hardships favors the moving party, and (4) in some cases, whether the public interest will be advanced by granting the preliminary relief. (*Owner-Operator Independent Drivers Ass'n v. Swift Transp. Co.*, 367 F.3d. 1108, 1111 (9th Cir. 2004).)

However, Plaintiff need not establish all four criteria in order for the motion for a preliminary injunction to be granted.  Instead, Plaintiff "must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, the balance of hardships tipping sharply in its favor and at least a fair chance of success on the

merits." *Id.* at 1111.

Nonetheless, in this case, DRC has evidence that satisfies each element of the four part test. DRC has a likelihood of success, will be irreparably harmed if relief is not granted, has the balance of hardships tipped in its favor, and will advance the public interest if relief is granted.

### A. DRC Is Likely to Succeed on the Merits Because Access to Records, Information, and Residents is Part of its Federal and State Mandates

DRC is part of a well established P&A System that was created by Congress to protect and advocate for the rights of persons with developmental and mental disabilities. As such, federal and state law authorize it to access records, information, and residents under certain circumstances and/or conditions.

Congress established the protection and advocacy system following the disclosure of horrifying and inhumane conditions, including physical abuse, at a New York facility for people with developmental disabilities, by enacting the Developmental Disabilities Assistance and Bill of Rights Act of 1975, 42 U.S.C. §§ 15001-15115. (*E.g., Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492, 494 (11th Cir. 1996) (describing the origin of the PADD Act).) Under the PADD Act, 42 U.S.C. §§ 15001 *et seq.*, and subsequent PAIMI Act, 42 U.S.C. §§ 10801 *et seq.*, DRC has the authority to 1) "pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such individuals[;]" 2) to "investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred[;]" and 3) to have access to residents at the facility at reasonable times. (42 U.S.C. § 15043(a)(2)(A)(ii),(B),&(H) (West 2009) [PADD];

42 U.S.C. § 10805(a)(1)(A)&(B),(3) (West 2009) [PAIMI].)  Additionally, pursuant to an abuse and/or neglect investigation, DRC may access relevant records and information.   (42 U.S.C. §§ 15043(a)(2)(I), (J), & (c); 45 C.F.R . § 1386.22 (1996).)

DRC's authority to conduct full investigations into abuse and neglect extends to all public and private facilities providing care and treatment in California. (42 U.S.C. § 10802(3) [PAIMI]; 45 C.F.R. § 1386.19 (1996) [PADD]; *see also* Cal. Welf. & Inst. Code § 4900(d).)   This includes Defendant Sierra Vista's private for-profit facility.   DRC opened a full investigation into abuse at Defendant Sierra Vista based on resident reports of excessive force and abuse during restraint practices. (42 C.F.R. § 51.2 (1997) (definitions of "full investigation" and "abuse"); *see also* Cal. Welf. & Inst. Code § 4900(b)&(h).) DRC also determined based on reports that there was probable cause that all residents of the facility may be at significant risk of abuse at the facility based on Defendants' behavioral restraint practices at Sierra Vista.   (42 C.F.R. § 51.2 (1997) (definition of "probable cause"); *see also* Cal. Welf. & Inst. Code § 4900(h) (West 2009); Declaration of Rachel Sherer (Sherer, Dec.) at pp. 199-246).  Such probable cause determination has continued during the course of DRC's investigation into Defendant Sierra Vista's restraint practices.

**1.    Plaintiff is Authorized to Access All Relevant Records and Information Pursuant to Its Determination of Probable Cause of Abuse Under Federal and State Law**

So that a P&A System can conduct a full investigation into and remedy instances of abuse and neglect of persons with developmental and mental disabilities, the PADD and PAIMI Acts authorize DRC access to certain records and information as follows.

The PADD Act provides DRC the authority to access "all records of . . . any

7

individual with a developmental disability who is a client of the system if such individual . . . has authorized the system to have such access." (42 U.S.C. § 15043(a)(I)(i).)  In addition to individual records, DRC has the authority to access "other records that are relevant to conduct an investigation . . . . " (42 U.S.C. § 15043(a)(J)(i).)  The term "record" includes "a report prepared or received by any staff at any location at which services, supports, or other assistance is provided to individuals with developmental disabilities[.]" (42 U.S.C. § 15043(c)(1); *see also* 45 C.F.R. § 1386.22(b)&(c) (1996) (access to records).)

The PAIMI Act also provides DRC broad authority to access "all records" of any individual who is a client of the system and who has authorized such access. (42 U.S.C. § 10805(a)(4)(A).)  The term "records" includes

> reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describes incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents . . . .

(42 U.S.C. § 10806(b)(3)(A); *see also* 42 C.F.R. § 51.41 (1997) (Access to records).)

DRC has requested the following records and information pursuant to its probable cause abuse investigation pursuant to laws described above. Defendants have denied and continue to deny DRC rightful access to such records and information in violation of federal and state law.

a. Restraint Incident Data

DRC has requested from Defendant Sierra Vista "Data from January 1, 2008 through February 28, 2009 regarding the number of restraint incidents at Sierra Vista, by type of restraint used and facility program." (Bayley Dec. Exhibits 6, 24, 26).  DRC has made this request in order to determine the pervasiveness

of behavioral restraint at the facility, whether there may be a particular type of restraint practice that is being used excessively and/or inappropriately such that it amounts to abuse, to monitor trends in behavioral restraint use at the facility, and for other purposes of its full abuse investigation based on probable cause.

b.  Facility Reports to Third Parties

DRC has requested from Defendant Sierra Vista "Each and every Notable Incident Report completed by facility staff from January 1, 2008 through February 28, 2009 regarding use of restraint at the facility, with redaction of resident name and medical record number." (Bayley Dec., Exhibit 26, at p. 182).  DRC has made this request in order to determine whether or not Defendant Sierra Vista is complying with law to report incidents of injury or abuse related to restraint, which is relevant to its full investigation into abuse.  Additionally, DRC believes that either an incident of injury has occurred that requires placement in restraint and/or an injury may result from placement in restraints.  In either situation, Defendant Sierra Vista should be documenting restraint practices in the Notable Incident Forms.  Further, these reports to third parties, with resident information redacted, would provide DRC with substantive information as to whether the restraint practices amounted to abuse.

c.  Facility Restraint-Documentation Forms

DRC has requested from Defendant Sierra Vista five types of documents that the facility uses to document restraint issues and/or incidents.

First, DRC has requested "Each and every Psychiatric Advance Directive completed by all Sierra Vista residents from January 1, 2008 through February 28, 2009, with redaction of resident name, record number, signature and printed name." (Bayley Dec., Exhibit 26 at p. 182).  The Psychiatric Advance Directive used by the facility is specifically designed to obtain informed consent from residents with respect to behavioral restraint practices. (Bayley Dec., Exhibit 16,

9

at pp. 100-103).   In some instances, residents select preferences for certain restraint practices and not others.   This document is relevant to DRC's investigation because it will provide information as to whether or not residents are fully informed as to their rights surrounding potentially abusive restraint practices.

Second, DRC has requested "Each and every P.A.R.T. Debriefing form completed by facility staff from January 1, 2008 through February 28, 2009, with redaction of resident name and medical record number." (Bayley Dec., Exhibit 26, at p. 182 and Exhibit 20 at pp.151-152). This document is used by the facility to facilitate a discussion between a staff member and the resident after the restraint incident regarding the reason for placement in restraint as well as the ways to avoid placement in restraint in the future.  This debriefing form would also include documentation of injuries that result from placement in restraint.  DRC is seeking these redacted documents in order to investigate whether Defendants' behavioral restraint practices are abusive.

Third, DRC has requested "Each and every Behavioral Restraint(s) Debriefing & Resolution form completed by facility staff from January 1, 2008 through February 28, 2009, with redaction of resident name and medical record number."   (Bayley Dec., Exhibit 26, at p. 182 and Exhibit 21 at pp 153-156). These documents are similar in content to the P.A.R.T Debriefing form.  Thus, DRC seeks these documents for the same reasons identified above with respect to the P.A.R.T. debriefing form.

Fourth, DRC has requested "Each and every Interview Narrative Record completed by facility staff from January 1, 2008 through February 28, 2009, with redaction of resident name(s), medical record number(s), signature, and printed name." (Bayley Dec., Exhibit 26 at p. 182 and Exhibit 22 at pp. 157-158).  This document is used by the facility to debrief with residents after restraints are used. DRC is seeking these redacted documents in order to investigate whether

Defendants' behavioral restraint practices are abusive.

Fifth, DRC has requested "Each and every restraint log kept by the facility from January 1, 2008 through February 28, 2009, including but not limited to that required under Title 22, Cal. Code Regs, § 72461(b), with redaction of resident names." (Bayley Dec., Exhibit 26 at pp. 182-183).  DRC seeks these documents to determine the  number of and information about incidents recorded by Defendant Sierra Vista staff in the log pursuant to its abuse investigation based individual complaints and probable cause. (*Cf. Ohio Legal Rights Services v. The Buckeye Ranch*, 365 F.Supp.2d 877, 887 (S.D. Ohio 2005).)

d. Other Relevant Records and Information

DRC has requested from Defendant Sierra Vista "The names of all facility staff trained on the use of restraints, including Pro-Act restraints, the date of such training, and the training materials." (Bayley Dec., Exhibit 26 at p. 183).  DRC has requested this information toward a determination of whether facility staff members are properly trained prior to using restraint practices when such practices appear to be abusive.  With this information, DRC may also investigate whether there are any particular staff members who tend to be using restraint practices more frequently than others or in a more abusive manner than others.

Defendants have given various reasons for denying DRC access to the requested records, none of which is defensible and each is described below.

**Initial reluctance and Delay**

Defendants initially hesitated to provide DRC access to any facility materials on use of behavioral restraint. (Bayley Dec., Exhibit 2, at p. 15).  They eventually produced Pro-Act Training Manuals, which were referred to as "procedures and materials." (Bayley Dec., Exhibit 5 at p. 20).

*Peer review and quality assurance privileges*

In response to DRC's request for restraint incident data, Defendants said that they "will not provide such data as the collection and reporting of such data is covered by state and federal peer review and quality assurance privileges." (Bayley Dec., Exhibit 9 at p. 31). DRC provided authority to the contrary. (Bayley Dec., Exhibit 24 at p. 176).

Defendants answered by acknowledging that the PAIMI Act "may preempt **state** law protections for peer review and quality assurance records under certain circumstances" but then went on to state that "42 C.F.R. § 483.75(o)(3) prohibits disclosure of records of the quality assessment and assurance committee." (emphasis in the original) (Bayley Dec., Exhibit 25, at p. 177). This regulation provides as follows:

> A State or the Secretary may not require disclosure of the records of such committee except in so far as such disclosure is related to the compliance of the committee with the requirements of this section.

42 C.F.R. § 483.75(o)(3) (2006).

DRC is not aware of any reported federal court decision interpreting this regulation. The Missouri Supreme Court has construed the relevant portion of the statutory authority for this provision under 42 U.S.C. §§ 1395i-3(b)(1)(B) & 1396r(b)(1)(B). (*State ex rel. Boone Retirement Ctr. v.* Hamilton, 946 S.W.2d 740, 743 (Mo. 1997).) It held that:

> The statute limits the scope of the privilege to "records of such committee." This statutory privilege is exceedingly narrow. It protects the committee's own records – its minutes or internal working papers or statements of conclusions – from discovery. No honest reading of the statute, however, can extend the statute's privilege to records and materials generated or created outside the committee and submitted to the committee for its review.

(*Id.* at 743; *cf. In the Mattter of Subpoena Duces Tecum to Jane Doe*, 99 *N.Y.2d 434, 436 (N.Y. 2003)* (privilege covers any reports generated by or at the behest of a quality assurance committee*); Hale v. Odd Fellow & Rebekah Health Care Facility*, 728 N.Y.S.2d 649, 651 (App. Div. 2001) (privilege does not cover maintenance and security records).)

None of DRC's eight requests for access to information or records can be characterized as a record developed by Defendant Sierra Vista's quality assessment and assurance committee solely for use by the committee.

With respect to the first request for restraint incident data, Defendants need to provide only duplicate existing information to DRC. Defendants are required to keep restraint logs on a daily basis. (Tit. 22, Cal. Code Regs., § 72461) (West 2009). They must document incidents of denial of rights, including incidents of restraint, in individual medical records. (*E.g.,* Tit. 9, Cal. Code Regs. § 865.3.) They must also report "unusual occurrences" that threaten the health, safety, and welfare of residents to the local health officer and the licensing Department, which should include behavioral restraint incidents. (Tit. 22, Cal. Code Regs. § 72541, 72521(c)(6).) Defendant Sierra Vista must also report behavioral restraint incidents to the local mental health director. (Tit. 9, Cal. Code Regs. § 866 (regarding quarterly reports).) Community standards for California nursing facilities such as Defendant Sierra Vista also require data collection specifically regarding the number of restraint incidents. (Cal. Health & Safety Code §§ 1180.2(d)(3)(E) & 1180.3(c)(4).) Thus, Defendant Sierra Vista should have restraint incident data available through a variety of media exclusive of peer and quality review reports. DRC merely seeks data and is not now seeking analyses, interpretations, conclusions concerning behavioral restraint incidents at the facility.

DRC has also requested redacted records prepared by Defendant Sierra

Vista to document restraint practices, namely:   Notable Incident Reports, Psychiatric Advance Directives, Restraint Debriefings, including Resident Interviews, and Restraint Logs.   DRC seeks these documents to evaluate Defendants' completion of them.  Specifically, DRC seeks to know whether such reports are individualized or whether the documentation provided by staff indicates patterns of rote completion, as has been reported to DRC.  (Scherer Dec. at p. 201).  Therefore, individual identifying information is not necessary as DRC seeks to evaluate the extent to which there are consistencies or inconsistencies in documentation suggesting abuse in the use of behavioral restraint at Defendant Sierra Vista. (*Cf. Arizona Center for Disability Law v. Allen*, 197 F.R.D. 689, 691 (D. Ariz. 2000) (access to redacted records later led to access to unredacted records).)  Here, DRC has probable cause to suspect that the well-being of all   residents of Defendant Sierra Vista is at significant risk of serious and immediate jeopardy and this warrants all the requested information and redacted records to properly investigate. (*See Iowa Protection and Advocacy Services, Inc. v. Gerard Treatment Programs*, 152 F.Supp.2d 1150, 1171-72 (N.D. Iowa 2001) (probable cause.)

These requested records should not be withheld under a peer review or quality committee privilege because production of such records is otherwise required by Defendants.  With respect to the Notable Incident reports, the Defendant Sierra Vista is required under federal and state law to complete and submit these reports to external entities. (Tit. 22, Cal. Code Regs. § 72541, 72521(c)(6) (requiring reporting of incidents that threaten welfare, safety or health of patients to the local health officer and the Department); 42 C.F.R. § 483.13(c)(2)&(4) (requiring reporting in compliance with state law within 5 working days of incident).) Additionally, pursuant to a superseding civil injunction, Defendant Sierra Vista must also report these incidents under state law to the

Department of Justice. (Scherer Dec., Exhibit 39 at pp. 242246).

The other requested records, including Advance Directives, debriefing documents, and restraint logs are requirements irrespective of Defendant Sierra Vista's peer review or quality committee. (*See* 42 C.F.R. § 489.102(a) (requirements for advance directives); Cal. Health & Safety Code §§1180.4(a)(1) (requiring a person's advance directive regarding de-escalation or the use of seclusion or behavioral restraints); Cal. Health & Safety Code § 1180.5(a)-(d) (requiring clinical and quality reviews, debriefing, discussions, and documentation of restraint); *e.g.,* Tit. 9, Cal. Code Regs. § 865.3 (regarding denial of rights documentation in treatment records); Tit. 22, Cal. Code Regs. § 72461(b) (requiring the facility to keep a restraint log).) Thus, this information is not solely used for quality assessment and assurance purposes.

Finally, Defendants are encouraged to ensure the provision of staff training to reduce or eliminate the use of seclusion and behavioral restraints based on best practices and with the input of stakeholders. (Cal. Health & Safety Code § 1180.3(b).) Thus, such information must be available for review by external entities. (Declaration of Leslie Morrison at pp. 2-6).

The fact that any of the above requested information or records that Defendants are otherwise required to prepare finds its way to the facility's quality assessment and assurance committee does not render it privileged pursuant to 42 C.F.R. § 483(o)(3) (2006).

However, even if any of the requested information or records could somehow be characterized as a record of such committee, Congress has authorized DRC access to peer review and quality review reports developed by Defendants. (*See Pennsylvania Protection & Advocacy, Inc. v. Houstoun,* 228 F.3d 423, 428 (3d Cir. 2000) (affirming right to access peer review records regarding suicide by state hospital patient); *Protection & Advocacy for Persons*

15

with Disabilities v. Mental Health & Addiction Servs., 448 F.3d 119, 128 (2d Cir. 2006) (affirming right to access peer review records pertaining to a restraint related death and a choking related death); Center for Legal Advocacy v. Hammons, 323 F.3d 1262, 1270 (10th Cir. 2003) (reversing denial of peer review and quality assurance records pertaining to four suicides at state hospital); Missouri Protection & Advocacy Servs. v. Missouri Dep't Mental Health, 447 F. 3d 1021, 1024 (8th Cir. 2006) (affirming right to access mortality and morbidity report concerning death of a state hospital patient).)

The statutory and regulatory privilege of a nursing facility quality assessment and assurance committee does not negate access authority accorded to P&A Systems such as DRC by Congress.

This matter concerns DRC's abuse investigation. (See Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr., 97 F.3d 492, 498-99 (11th Cir. 1996) (P&A probable cause determination is not an indictment but rather a civil investigation).)

In addition, the federal statute and implementing regulations relied on by Defendants expressly recognize the unique role of P&A Systems such as DRC. (42 U.S.C. § 1396r(c)(2)(B)(iii)(III)&(IV) (information about P&A systems); 42 C.F.R. § 483.10(j)(v) (access rights of P&A system for individuals with developmental disabilities); 42 C.F.R. § 483.10(j)(vi) (access rights of P&A system for individuals with mental illness).)

Thus, Defendants cannot continue to deny DRC's access to records authority by slipping requested information and records in the envelope of a peer review or quality committee privilege thereby subverting Congressional mandates.

**Claim of no authority to access information about the facility**

Defendants also assert that the restraint incident data and all of the other requested reports are deemed "beyond the scope of the authority granted to

protection and advocacy agencies such as DRC." (Bayley Dec., Exhibit 33, at p. 195).   They claim that the "plain language of [federal and state] statutes and regulations . . . precludes DRC from obtaining general information about the facility and its operations." *Id*.

Clearly, DRC is authorized to obtain general information about Sierra Vista and its operations based on applicable statutory and regulatory language.   For example, PADD Act regulations provide for DRC's access to:

> Information in professional, performance, building or other safety standards, demographic and statistical information relating to a facility.

(45 C.F.R. § 1386.22(c)(2) (1996).)   The PAIMI Act regulations similarly provide for DRC's access to information and records by and about Defendant Sierra Vista. (42 C.F.R. § 51.42(c)(a)(1),(2),(4)&(5) (1997); *see also* Cal. Welf. & Inst. Code § 4903(b) ("information and records . . . shall include, but not be limited to . . . reports prepared by any member of the staff of a facility").)   Thus, pursuant to multiple provisions in both federal and state statutes and implementing regulations, DRC is entitled to access behavioral restraint incident data and other requested reports prepared by Defendant Sierra Vista staff as part of its abuse investigation.

Defendants further assert that DRC "does not have the right to access any [staff] training materials or data regarding [staff] training" on use of restraints. (Bayley Dec., Exhibit 33 at p. 196).   This, too, is contrary to the plain language of 45 C.F.R. § 1386.22(c)(2) (1996) and 42 C.F.R. § 51.41(c)(5) (1997).

2.   **Plaintiff has Authority to Access Sierra Vista and Its Residents Pursuant to its State and Federal Mandate as the Protection and Advocacy Agency**

As referenced above, DRC has the authority to access facilities under 42

17

U.S.C. section 10805(a)(3).  The PAIMI Act regulations provide for DRC's access to Sierra Vista and residents therein for the following purposes:  when "there is probable cause to believe than an incident has or may have occurred"; "providing information and training"; and "monitoring compliance with respect to the rights and safety of residents." (42 C.F.R. §§ 51.42(b), 51.42(c)(1)&(2) (1997); *see also* 45 C.F.R. § 1366.22(f)&(g) (1996); Cal. Welf. & Instit. Code § 4902(b).)

DRC's April 8, 2009 request to Defendants for access to Sierra Vista and the residents therein on April 17, 2009, from 11 am to 3 pm, was reasonable given that these were normal business hours. (Bayley Dec., Exhibit 28 at pp. 185-186).

Defendants delayed and then denied Plaintiff's access to Defendant Sierra Vista.  In an e-mail dated April 10, 2008, Defendants' counsel stated that he would get back to DRC with alternative dates. (Bayley Dec. , Exhibit 29 at p. 187). He then sent a letter dated April 27, 2009 denying access and instead proposing a meet and confer to develop an access protocol. (Bayley Dec., Exhibit 30, at p. 189).

DRC sent a letter stating its willingness to discuss access to the facility and residents consistent with the plain language of applicable statutory and regulatory language.  (Bayley Dec., Exhibit 31 at pp. 190-91).

Defendants replied with a list of six terms and conditions, which are unsupportable particularly in light of DRC's abuse investigation based on probable cause.  First, Defendants will grant access only "during normal business hours." (Bayley Dec., Exhibit 32 at p. 193).  While DRC has never sought access to the facility outside normal business hours, it preserves its authority for "reasonable unaccompanied access to residents *at all times necessary* to conduct a full investigation . . . ." into abuse at the facility. (42. C.F.R. § 51.42(c) (1997) (emphasis added); *see also* 45 C.F.R. § 1386.22(f) (1996) ("when necessary");

Cal. Welf. & Inst. Code § 4902(b)(b)(1) ("at all times as are necessary").)

Second, Defendants seek to restrain DRC's access to Sierra Vista and residents therein by requiring "at least five business days advance written notice." (Bayley Dec., Exhibit 32 at p. 193). This conflicts with DRC's access authority under federal and state law. For example, requiring advance notice would "seriously hinder" DRC's abuse investigation function. (*Equip for Equality, Inc. v. Ingalls Memorial Hosp.*, 292 F.Supp.2d 1086, 1100-1101 (N.D.Ill. 2003), *citing Robbins v. Budke*, 739 F.Supp. 1479 (D.N.M. 1990).)

Third, Defendants require that advance notice "include a statement of the nature and purpose of the visit." (Bayley Dec., Exhibit 32 at p. 193). This conflicts with DRC's duty to keep information confidential. (42 C.F.R. § 51.45 (date); Cal. Welf. & Inst. Code § 4903(f).)

Fourth, Defendants improperly seek "to observe the activities of the DRC staff during the visit . . . ." (Bayley Dec., Exhibit 32 at p. 193). This is plainly counter to DRC's right of "unaccompanied access" to Sierra Vista. (42 C.F.R. §§ 51.42(b)&(c) (1997); 45 C.F.R. § 1386.22(f)&(g) (1996); Cal. Welf. & Inst. Code § 4902(b)(1)&(2). In addition, this right must "include the opportunity to meet and communicate *privately* with individuals regularly, both formally and informally . . . ." 42 C.F.R. § 51.41(d) (1997); 45 C.F.R. § 1386.22(h) (1996). Furthermore, residents who otherwise may be willing to initiate contact with DRC staff may be deterred if the nature or purpose of such contact is disclosed to the Defendants. *Robbins v. Budke*, 739 F.Supp. at 1486. As the court stated:

> Many institutionalized residents are reluctant or afraid to take actions that might incur the displeasure of staff who control nearly every aspect of their daily life.

*Id.*

Finally, Defendants fifth and sixth so-called "terms and conditions" on

DRC's access to the facility vis-à-vis abrupt refusal or termination of access are altogether incongruous DRC's access authority and resident rights under federal and state law. (*E.g.*, 42 U.S.C. § 1396r(c)(2)(B)(iii)(III)&(IV); 42 C.F.R. §§ 483.10(j)(v) & 483.10(j)(vi) (2006); *State of Connecticut Office of Protection and Advocacy for Persons with* Disabilities *v. Hartford Bd. Educ.*, 355 F.Supp.2d 649, 664 (D. Conn. 2005) (access to students to determine if there was mistreatment).)

### 3.   Plaintiff has Rights to Prompt Access to Records and Records

Pursuant to its Federal and State Mandates as the P&A Agency, DRC has a right to access individual records and "other records that are relevant to conducting an investigation . . . not later than 3 business days after the system makes a written request for the records involved." (42 U.S.C. § 15043(a)(2)(J)(i); *see also* 42 U.S.C. § 15043(a)(2)(J)(ii) (immediate access).)

DRC's right of access to Defendant Sierra Vista and its residents must be provided "at all times necessary" fully to investigate abuse. (42 C.F.R. § 51.42(b) (1997); *see also* 45 C.F.R. § 1386.22(f) (1996); Cal. Welf. & Inst. Code § 4902(b)(1).

A facility must promptly provide a written statement of reasons if the P&A system's access to facilities, programs, residents or records is delayed or denied. (42 C.F.R. § 51.43 (1997); 45 C.F.R. § 1386.22(i) (1996).)

Defendants have failed to provide access to records and Sierra Vista residents in a timely manner, and they have failed promptly to provide a written statement of reasons for its delay or denial of DRC's requests for access to records and the facility.

Thus, Plaintiff is likely to prevail on the merits of its access claim.

### B.   Plaintiff Is Suffering Irreparable Injury and Will Continue to Do So Unless the Court Grants the Motion for Preliminary Injunction

The second criterion weighed by courts in determining whether or not to grant a preliminary injunction is whether or not Plaintiff is suffering irreparable injury.   Several courts have found that a P&A suffers irreparable injury if its mission of protecting and advocating for the rights of its constituents is frustrated. For example, the Second Circuit recently approvingly cited a district court's statement that "Courts have concluded that a P&A system's inability to meet its federal statutory mandate to protect and advocate for the rights of individuals with disabilities is an irreparable harm for purposes of injunctive relief." (*State of Connecticut Office of Protection and Advocacy for Persons with Disabilities v. Hartford Bd. Educ.*, 464, F.3d 229, 234 (2d Cir. 2006).)   Additionally, a district court has found that a children's psychiatric facility improperly denied the P&A access to records and residents. (*Iowa Protection and Advocacy Services, Inc. v. Gerard Treatment Programs*, 152 F.Supp.2d 1150, 1176 (N.D. Iowa 2001).) According to the court, "[the P&A has . . . been irreparably harmed by being prevented from pursuing fully its right to access records and patients." *Id.* at 1173. In a case involving P&A access to the records of two deceased residents, another district court found that

> the defendant's refusal to provide [the P&A] with records that it is entitled to review (indeed, charged to review as part of its responsibilities) does in very real and readily identifiable way, pose a threat to the plaintiff's being able to discharge its obligations.   And no amount of damages will remedy that sustained harm.

*Wisconsin Coalition for Advocacy v. Czaplewski*, 131 F.Supp.2d 1039, 1051 (E.D. Wis. 2001).   Here, DRC is prevented from fully investigating suspected abuse at Defendant Sierra Vista related to restraint practices because Defendant Sierra Vista has denied access to relevant records, information, and access to residents

21

to complete such an investigation.  The actions and inactions by Defendants have forced DRC to expend time and resources repeatedly following up with Defendants on its requests often to no avail, and DRC's advisement of its constituents about their rights and Defendants' responsibilities have been delayed.  Most importantly, the Sierra Vista residents DRC is mandated to serve are at risk of injury and death.  Thus, DRC, and its constituents, have suffered and continue to suffer irreparable injury.

### C.   The Balance of Hardships Favors Plaintiff

The third criterion weighed by courts in determining whether or not to grant a preliminary injunction is whether or not DRC's hardship outweighs that of defendant.  Since DRC is entitled to access to all relevant records prepared by staff of Defendant Sierra Vista and to reasonable unaccompanied access to the facility and residents therein, Defendants suffer no harm other than production of documents.   DRC, on the other hand, is stymied and thwarted in its full investigation into abuse at the facility.  Critically, the abuse investigation that DRC has undertaken is to evaluate restraint practices that professional literature states can lead to serious injury or death.  DRC requests information, records, and access to residents to prevent such serious injury or death.  The hardship to Defendant to produce the documents is miniscule in light of the harm that can be prevented or stopped by providing relevant information and records to further a full investigation.

Further, in a case involving a P&A finding of probable cause for an investigation under the PADD Act, the Eleventh Circuit identified the interests involved in the hardship balance as follows:

> In the P&A probable cause process, the interests of three parties are implicated - those of the facility, those of the individual who may have been subject to abuse and his or her family, and those

22

of the P&A, which has an obligation and mandate to protect from abuse the individual(s) and others who are similarly situated.  In this balance, the facility's interests surely are less viable and of less import than those of the individual and the P&A.  The facility can claim no interest in avoiding investigations of harm or injury to a person with a disability. . . . Indeed, one would suppose that a facility's legitimate interests are served when abuse and neglect are uncovered and can be corrected.  Likewise, when a P&A makes a finding of probable cause, no liberty interest of the developmentally disabled person is threatened, as it is precisely that interest that the P&A seeks to protect.

(*Alabama Disabilities Advocacy Program v. J.S.. Tarwater Developmental Ctr.*, 97 F.3d 492, 499 (11th Cir. 1996).)

The same principles identified above to balance the respective interests between DRC and Defendants apply here.  Defendants' can claim no legitimate interest in shielding the number of restraint incidents by type of restraint and facility program.  Presumably, Defendants will actually benefit from disclosure of all records relevant to whether their restraint practices amount to abuse and whether their staff are fully informed of and educated about their responsibilities related to restraint practices. With such information, for example, written policies could be implemented that would prevent future abuse.  (*See also Iowa Protection and Advocacy Servs., Inc. v. Gerard Treatment Programs*, 152 F.Supp.2d 1150, 1174-75 (N.D. Iowa 2001) (finding that the interests of a facility in forestalling an investigation bordered on the non-existent).)

Facility residents have interests in being free from abuse as well as excessive and inappropriate behavioral restraint.  (42 U.S.C. § 1396r(c)(1)(A)(ii); Cal. Welf. & Inst. Code § 5325.1(c).)  Residents also have an interest in ensuring that the facility is completing assessments and service plans in accordance with statutory, regulatory, and professional standards.  Further, residents have a protected interest in a safe environment free from having to experience or witness abuse or excessive or inappropriate use of force by facility staff on themselves or

23

other residents, perhaps on a daily basis and even repeatedly each day.

If DRC's Motion for a Preliminary Injunction is denied, it will be unable to carry out its statutory obligation to provide effective protection and advocacy services to individuals with disabilities. Congress intended that California, like other states, have an "effective" P&A agency, not simply a *pro forma* organization which has the theoretical power to investigate cases of possible neglect but no effective way to carry out those investigations. *Mississippi Protection & Advocacy System, Inc. v. Cotten,* 929 F.2d 1054, 1058 (5th Cir. 1991). If this Court denies DRC's Motion, DRC will be irreparably harmed in ways reaching far beyond this case, as its ability to carry out future investigations, to ferret out abuse and neglect, would be severely compromised.   Conversely, if DRC's Motion for a Preliminary Injunction is granted, Defendants will merely be required to do that which the law requires. (*Wisconsin Coalition for Advocacy* v. *Czapelewski*, 131 F.Supp.2d 1039, 1052 (E.D. Wis. 2001); *Iowa Protection and Advocacy Servs. Inc.* v. *Gerard Treatment Programs*, 152 F.Supp.2d 1150, 1174 (N.D. Iowa 2001); *Advocacy Center* v. *Stadler,* 128 F.Supp.2d 358, 368 (M.D. La. 1999).)

Thus, hardship to DRC outweighs that to Defendants.

## D.   The Public Interest Will be Advanced by the Grant of Preliminary Relief

The fourth criterion weighed by courts in determining whether or not to grant a preliminary injunction is whether or not public interest will be advanced.   As noted above, Congress enacted the PAIMI Act because of concern that individuals with mental illness were vulnerable to abuse and neglect and that their rights needed to be protected.   Providing DRC access to requested facility records will enable DRC to proceed with its full investigation into abusive restraint practices that can cause serious injury or death.   As such the public interest to prevent abuse is advanced.

24

Furthermore, the public interest will be advanced by Defendant Sierra Vista's transparency concerning its use of behavioral restraint. Defendants have reported to the State and county programs that there were only three (3) incidents of behavioral restraint at the facility in 2008. (Scherer Dec., Exhibit 36, at pp. 217-228. DRC's review of a sample of Defendant Sierra Vista's notable incident reports from 2008 has found 20 incidents of behavioral restraint at the facility in 2008. (Scherer Dec., Exhibit 37, at pp. 229-239). Further, pursuant to its abuse investigation, DRC has learned that there were 188 incidents of behavioral restraint involving 11 individuals in 2008. (Scherer Dec. at p. 203).

DRC's access to the facility and residents will advance the public interest by ensuring that the rights and safety of individuals with psychiatric and , developmental disabilities are respected. Further, residents will receive complete information regarding their rights, DRC's advocacy services, and Defendants' responsibilities.

## CONCLUSION

For all of the above reasons, this Court should issue a preliminary injunction granting DRC access to records prepared by Defendants and granting DRC access to Defendants' facility and residents in accordance with federal and state law.

Dated: May 21, 2009                    Respectfully Submitted


Disability Rights California


By: _____
      Michael Stortz, SBN 153378
      Attorney for Plaintiff

25